IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN F. KODENKANDETH, <br><br> Plaintiff, <br><br> v. <br><br> UPMC HEALTH PLAN, INC., UPM CORPORATE HOLDING CO., UNIVERSITY OF PITTSBURGH PHYSICIANS SERVICE, MAXIMUS FEDERAL SERVICES, SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendants. | 2:23-CV-02049-CCW |

**OPINION AND ORDER**

Before the Court are Defendants' three Motions to Dismiss Plaintiff's Complaint. ECF Nos. 49, 51, 52. For the reasons set forth below, the Court will **GRANT** Defendants' Motions and dismiss Plaintiff's Complaint.

**I.   Background**

This case relates to pro se Plaintiff John F. Kodenkandeth's two appeals of insurance coverage decisions under the Medicare Act, 42 U.S.C. §§ 1395 *et seq*. The Medicare Act established the Medicare program, which is a federally funded health insurance program for qualifying individuals who are elderly or disabled. 42 U.S.C. § 1395c(1). Defendant Secretary of Health and Human Services administers the Medicare program through the U.S. Department of Health and Human Services. ECF No. 50 at 2–3. Defendants UPMC Health Plan Inc. d/b/a UPMC

for Life, UPM Holding Company, Inc.,[1] and University of Pittsburgh Physicians (collectively, "UPMC Defendants") are Medicare carriers who provide Medicare Advantage plans. ECF No. 54 at 2. The UPMC Defendants issued the Medicare Advantage plan in which Mr. Kodenkandeth was enrolled during the relevant time. ECF Nos. 54 at 2; 1-2 ¶ 15.

When an insurance carrier makes a coverage decision with which the patient disagrees, the patient may appeal the decision through the Medicare Act's administrative appeal process. The appeal process involves four steps: (1) first, the patient submits a request for redetermination to the original decisionmaker; (2) if that request is denied, the patient then may seek reconsideration by a qualified independent contractor ("QIC"); (3) if the QIC denies the appeal, the patient may seek a hearing with an Administrative Law Judge ("ALJ"); and (4) if the ALJ issues an adverse judgment, the patient may request a review of the ALJ's judgment with the Medicare Appeals Council. ECF No. 53 at 6. Defendant Maximus Federal Services is a QIC who reviews appeals at the second stage of the Medicare Act's administrative appeal process. *Id.* After exhausting the administrative appeals, a patient may seek judicial review of the final administrative decision in federal District Court. *Id.*

Mr. Kodenkandeth's case arises from two incidents. ECF No. 1-2 ¶ 18. The first incident began on April 15, 2021 when Mr. Kodenkandeth called a UPMC call center to schedule an appointment for a procedure he identifies as a "Fluorescein Angiography (includes multiframe imaging) with interpretation and report." *Id.* ¶ 20. Mr. Kodenkandeth alleges that he was given an appointment with a retina specialist for April 22, 2021 at UPMC Bethel Park Clinic. *Id.* During the April 22 appointment, Mr. Kodenkandeth was charged a $45 co-pay but alleges that the clinic

---

[1] Defendant UPM Holding Company, Inc. indicates that it has been incorrectly named in the Complaint as "UPM Corporate Holding Company" and should be called UPMC Holding Company, Inc., although it has not filed a motion to amend the caption. ECF No. 5 at 1.

2

was not equipped to perform his requested procedure. *Id.* ¶ 21. Therefore, Mr. Kodenkandeth sought a refund of his co-pay, but the clinic refused. *Id.* Mr. Kodenkandeth asserts that he then followed the four-step administrative appeal process contesting the clinic's refusal to issue a refund, but all of his appeals were denied. *Id.* ¶¶ 22–27.

The second incident occurred on September 3, 2021, when Mr. Kodenkandeth went to an appointment at the UPMC Mercy Audiology Center to get hearing aids. *Id.* ¶ 30. At the appointment, an audiology technician determined that Mr. Kodenkandeth had hearing loss in both ears and needed hearing aids. *Id.* Mr. Kodenkandeth contends that the cost of in-network hearing aids could be as much as $10,000 depending on the brand name, manufacturer, and service terms involved. *Id.* He asserts that he was required to sign an agreement that would have made him liable for the $10,000 minus a $500 allowance under the UPMC Medicare Advantage Plan. *Id.* Mr. Kodenkandeth then claims that he requested permission from his insurance provider to purchase out-of-network hearing aids, which would have cost less than $400 but that request was denied. *Id.* ¶ 31. He contends that he is now liable for the balance of $9,500. *Id.* Mr. Kodenkandeth then appealed the decision to deny the out-of-network hearing aids, following the four-step process, but all of his appeals were denied. *Id.* ¶¶ 32–36.

On October 31, 2023, after the termination of the administrative appeal process, Mr. Kodenkandeth filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania. ECF No. 1-2. The complaint contains 41 counts against Defendants, raising both federal and state claims. *Id.* On November 30, 2023, the Secretary removed the case to federal court pursuant to 28 U.S.C. §§ 1442, 1446. ECF No. 1. The UPMC Defendants, the Secretary, and Maximus all filed individual Motions to Dismiss. ECF Nos. 49, 51, 52. Briefing on the Motions is now complete, and they are ripe for resolution.

II.     Legal Standard

1.      Rule 12(b)(1) Standard

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge contests subject matter jurisdiction without contesting the facts alleged in the complaint, whereas a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). "In sum, a facial attack 'contests the sufficiency of the pleadings' . . . 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party*, 757 F.3d at 358 (citations omitted). Defendants' Motions present a facial challenge to subject matter jurisdiction because they argue, in relevant part, that the Court does not have jurisdiction because Mr. Kodenkandeth does not meet the amount-in-controversy requirements. *See* ECF Nos. 50 at 9–10; 53 at 8–10; 54 at 4–5. As such, in ruling on Defendants' Motions, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Constitution Party*, 757 F.3d at 358 (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).

2.      Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the

elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").  And when resolving a pro se plaintiff's motion, courts "liberally construe pro se filings with an eye toward their substance rather than their form" *See United States v. Delgado*, 363 Fed. App'x 853, 855 (3d Cir. 2010).

### III. Legal Analysis

In his Complaint, Mr. Kodenkandeth brings 41 counts alleging violations of multiple federal and state laws as well as various damages amounts.  See generally ECF No. 1-2.

Defendants respond that, despite Mr. Kodenkandeth's stylization of his claims, they all "arise under" the Medicare Act. ECF Nos. 49, 51, 52. And for the Court to have federal jurisdiction under the Medicare Act, Mr. Kodenkandeth must meet the Medicare Act's amount-in-controversy requirement, which Defendants contend he has failed to do. *See Id.*

To obtain judicial review of "any claim arising under" the Medicare Act, a claimant must first complete the administrative appeal process. See 42 U.S.C. § 1395ii (adopting the Social Security statute 42 U.S.C. § 405(h), which strips federal courts of primary federal-question subject-matter jurisdiction over Medicare claims); 42 U.S.C. § 1395ff(b)(1) (adopting the Social Security statute 42 U.S.C. § 405(g), which grants federal courts jurisdiction to hear Medicare claims only after administrative review is exhausted). In addition to completing the administrative appeal process, a claimant must also meet the amount-in-controversy requirements. 42 U.S.C. § 1395w-22(g)(5). The Court will first address whether Mr. Kodenkandeth's claims arise under the Medicare Act, and then whether he meets the amount-in-controversy requirement.

1. **Mr. Kodenkandeth's Claims Arise Under the Medicare Act**

Mr. Kodenkandeth's claims include counts styled as claims arising under the Medicare Act, Americans with Disabilities Act, RICO statute, 42 U.S.C. § 1983, as well as numerous state-law claims. *See generally* ECF No. 1-2. Defendants contend that despite Mr. Kodenkandeth's stylization of his claims, they all "arise under" the Medicare Act because they stem from his two administrative appeals regarding Medicare insurance coverage decisions. ECF Nos. 50 at 9–10; 53 at 8–10; 54 at 4–5. In response, Mr. Kodenkandeth asserts that his claims have a factual basis, and that Defendants have failed to show that such claims are statutorily deficient. ECF Nos. 64 at 4; 66 at 4; 68 at 5. Mr. Kodenkandeth does not otherwise respond directly to this argument. *See generally* ECF Nos. 64, 65, 66, 67, 68, 69.

A claim arises under the Medicare Act when "'both the standing and the substantive basis for the presentation' of a claim is the Medicare Act." *Temple Univ. Hospital, Inc. v. Sec'y U.S. Dep't of Health & Human Services*, 2 F.4th 121, 130 (3d Cir. 2021). Claims that are "inextricably intertwined" with a claim for benefits under the Medicare Act are considered to "arise under" the Medicare Act. *Nichole Medical Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 348 (3d Cir. 2012). A claim is "inextricably intertwined" when "it does not involve issues separate from the party's claim that it is entitled to benefits and/or if those claims are not completely separate from its substantive claim to benefits." *Id.* In general, "[w]hat constitutes 'arising under' the Medicare Act has been interpreted quite broadly." *Trostle v. Centers for Medicare & Medicaid Servs.*, 709 F. App'x 736, 739 (3d Cir. 2017).

Here, several of Mr. Kodenkandeth's claims directly arise under the Medicare Act because they cite a violation of the Medicare Act. ECF No. 1-2 (Counts 4, 5, 6, 15, 16, 22, 34). Although the remaining claims do not cite violations of the Medicare Act, they all appear to "arise under" it because they are inextricably intertwined with the claims that explicitly cite Medicare Act violations. Such claims are inextricably intertwined because they all stem from the two Medicare coverage decisions at issue—the refusal to refund the $45 co-pay and the denial of the out-of-network hearing aids—as well as the resulting Medicare administrative appeal process. *See* ECF No. 1-2 at 12 (citing the co-pay decision and hearing aid decision as the "two incidents that are the subject of this complaint.").

The fact that Mr. Kodenkandeth has styled certain counts as arising under other federal or state laws does not affect whether such claims "arise under" the Medicare Act. For example, in *TriCenturion, Inc.*, the plaintiff alleged that defendant wrongfully entered a premises to review medical records and improperly withheld medical payments. 694 F.3d at 347–48. In determining

7

whether such claims arise under the Medicare Act, the court assessed the underlying conduct at issue and the parties' relationship—not how the plaintiff styled her claims. *Id.* Ultimately, the court determined that the plaintiff's claims arose under the Medicare Act because the conduct at issue and the parties' relationship are "firmly rooted in the Act." *Id.*

Here, looking to the underlying conduct and the parties' relationship, the Court finds that it is "firmly rooted" in the Medicare Act. The claims all stem from the two Medicare insurance coverage decisions that occurred when Mr. Kodenkandeth sought treatment from Defendants. *See Trostle*, 709 F. App'x at 739 ("[T]his matter, involving as it does the question of the recovery of amounts paid by Medicare, plainly 'arises under' the Medicare Act."); *see, e.g.*, ECF No. 1-2 at 45–46 (alleging a RICO violation in Count 18 because of "poorly trained call center employees [who] deny services to enrollees," "ownership of hospitals… to maximize revenue from Medicare," and "NO reasonable or unbiased grievance process that safeguards the interests of the plaintiff and enrollees."); 52–53 (alleging an APA violation in Count 19 because Defendants' appeal process is an "abuse of their ministerial function" and their decisions are "arbitrary, capricious and biased."); 61–62 (alleging an ADA violation in Count 27 because "Defendant Maximus did NOT have a complaint and grievance procedure, through which plaintiff could formalize and record a formal complaint."). Further, Mr. Kodenkandeth argues that the Medicare coverage decisions and the subsequent Medicare appeal process are unfair and unlawful—assertions which directly relate to the Medicare Act. *Id.* (affirming that plaintiff's claims arise under the Medicare Act because plaintiff alleges unfair procedures and practices that are part of the Medicare Act, even though plaintiff has styled such claims as state-law equitable claims). Accordingly, because Mr. Kodenkandeth's claims relate to Medicare coverage decisions and the Medicare appeal process, the Court finds that such claims arise under the Medicare Act.

### 2. Mr. Kodenkandeth's Claims Fail to Meet the Amount-in-Controversy Requirement

In their Motions to Dismiss, Defendants argue that Mr. Kodenkandeth's Complaint should be dismissed because he cannot meet the amount in controversy needed to seek judicial review of an administrative appeal under the Medicare Act. ECF Nos. 50 at 9–10; 53 at 8–10; 54 at 4–5. Mr. Kodenkandeth responds that Defendants make "false statements" about the amount in the controversy and that the applicable amount-in-controversy threshold should be the amount for the year 2020, and not 2023 as Defendants cite. ECF Nos. 64 at 4–5; 66 at 4–5; 68 at 5–6.

Under the Medicare Act, a claimant must meet the amount-in-controversy requirement before obtaining judicial review. 42 U.S.C. § 1395w-22(g)(5). There is an annual adjustment to the amount-in-controversy threshold which is effective for judicial review requests filed that year. *See* 87 Fed. Reg. 59437-01 (Sept. 30, 2022). For judicial review requests filed on or after January 1, 2023, the inflation-adjusted amount-in-controversy threshold to seek judicial review was $1,850. *Id.* Here, the applicable amount-in-controversy threshold for Mr. Kodenkandeth is the threshold amount for 2023 because he filed his Complaint and sought judicial review in 2023. ECF No. 1-2. Therefore, the amount-in-controversy threshold for Mr. Kodenkandeth's claims is $1,850.

Mr. Kodenkandeth's Complaint alleges that he suffered the following damages: $45.00 for an improper co-pay charge; $1,805.00 for "additional expenses, costs and damages;" $9,500.00 worth of potential liability for the cost of in-network hearing aids; and $400.00 for the price of out-of-network hearing aids. ECF No. 1-2 at 12–21. The majority of Mr. Kodenkandeth's damage assertions, however, are vague and speculative. For example, Mr. Kodenkandeth merely alleges that he may be liable for $9,500.00 but does not assert that he actually paid this amount.

Further, for the price of out-of-network hearing aids, Mr. Kodenkandeth does not claim that he actually paid the $400 for these hearing aids. Finally, Mr. Kodenkandeth does not explain or elaborate as to the additional expenses he incurred or what the "costs and damages" are. Therefore, the only monetary damage Mr. Kodenkandeth alleges to have suffered is the $45.00 co-pay, which falls far short of the $1,850 amount-in-controversy threshold. Accordingly, because Mr. Kodenkandeth cannot meet the amount-in-controversy requirement needed to seek judicial review under the Medicare Act, and because all of Mr. Kodenkandeth's claims arise under the Act, the Court will grant Defendants' Motions to Dismiss. Mr. Kodenkandeth, however, will be granted leave to amend the portions of his claims that allege $1,805.00 for "additional expenses, costs and damages;" $9,500.00 worth of potential liability for the cost of hearing aids; and $400.00 for the price of out-of-network hearing aids. The portions of Mr. Kodenkandeth's claims regarding the improper $45 co-pay, however, will be DISMISSED WITH PREJUDICE.

## IV.     Conclusion

For the forgoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss, ECF Nos. 49, 51, 52, and **DISMISSES** Mr. Kodenkandeth's Complaint, ECF No. 1-2. Mr. Kodenkandeth will be granted leave to amend the portions of his claims alleging "additional expenses, costs and damages" as well as the $9,500 potential liability for in-network hearing aids and the $400 price of out-of-network hearing aids. Mr. Kodenkandeth's Amended Complaint, if any, must be filed on or before September 4, 2024. If no Amended Complaint is filed, the dismissal without prejudice will be converted to a dismissal with prejudice without further action by the Court.

DATED this 16th day of August, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

John F. Kodenkandeth
1926 Pauline Ave, Apt 406
Pittsburgh, PA 15216
Pro Se